Moses, J.
This matter is before the Court on motions in limine filed by Norfolk and Dedham Group (“Norfolk”) and Travelers Property Casualty Corp. (Travelers). Travelers’ motion seeks to preclude the testimony of Jeffrey Adams, Ph.D., while Norfolk’s motion seeks to preclude the testimony of Jeffrey Adams, Ph.D., Howard Hu, M.D. and Eckardt Johanning, M.D.
A three-day evidentiary hearing was conducted at which the plaintiff called Dr. Adams and Dr. Johanning with Travelers and Norfolk calling as witnesses Harriet N. Burge, Ph.D. and William M. Vaughn, Ph.D.
DISCUSSION
This action arises out of alleged contamination of the plaintiffs’ home by a mycotoxin known as Ochratoxin-A. The plaintiff asserts and seeks to prove through expert testimony that the failure of a hot water heater in her basement on or about April 2, 1995 and *353 resulting flooding produced one or more fungi which produced a toxin known as Ochratoxin-A. The plaintiff asserts that such mycotoxin has caused her damage including the loss of use of her property.
The Testimony of Jeffrey Adams, Ph.D.
Dr. Adams is employed as an independent consultant affiliated with Romer Labs which has been in business since 1981 and specializes in the identification and detection of mycotoxins. Romer concentrates its activities in the feed and grain market, however, it has expanded into other areas. Dr. Adams was assigned by Romer to investigate the presence of fungi at the Liska home. Dr. Adams testified that Ochratoxin-A is a potent mycotoxin which is produced by one of two genuses, Aspergillus or Penicillium. Molds had been identified at the premises including Aspergillus and Penicillium mold including Aspergillus ochraceus, which is one of the organisms which produces Ochratoxin-A.
Prior to Dr. Adams going to the Liska premises in early .2001, there had been earlier samplings at the premises in 1999 and 2000.
Dr. Adams obtained a history with respect to the Liska house from Ms. Liska and tested to determine whether or not Ochratoxin was present in the furnace in the Liska home. He was also to determine whether or not the April 1995 flooding event was a cause of the mold infestation which ultimately produced the Ochratoxin-A which was detected in the Liska household.
Travelers and Norfolk challenged the methodology used by Romer in testing the presence and levels of mycotoxins at the Liska household. The Court concludes that the methodology followed by Romer as explained by Dr. Adams was and is sufficiently reliable within the scientific community and hence if such test results are properly authenticated, shall be admissible in this action.
The Court notes that Dr. Vaughn, who was called by the defendants, testified that he essentially conducted an experiment with Romer by sending certain pre-tested samples to Romer to determine its accuracy. The Court concludes that such experiment was not conducted under particularly stringent supervision of Dr. Vaughn and in and of itself is insufficient to preclude test results in connection with the Liska home.
Dr. Adams has further opined that based upon the history which he received with respect to prior water activity at the Liska home that the only significant major water event occurring which could have caused the growth of the Aspergillus and Penicillium was the water heater failure of April 1995.
While there was some disagreement within the scientific community as to the nature, extent and duration of water events which may cause or contribute to the growth of fungi, it appears that at least a significant segment of the scientific community is of the opinion that some significant water event may be such a contributing cause. The Court notes that the credibility of Sandra Liska as well as her reliability as a historian will require a determination by the jury in determining whether or not the plaintiffs’ expert is basing his opinion on fact. The defendants point to various circumstances which call into question the accuracy of the plaintiffs’ history with respect to prior water events at the house, however, these matters are best left to the jury to sort out in weighing the credibility of the parties and their expert witnesses.
The Court, therefore, denies the motions of the defendants to preclude the testimony of Dr. Adams.
The Testimony of Dr. Johanning
Dr. Johanning is a medical doctor who specializes in family medicine and also specializes in occupational/environmental medicine. He served his residency in occupational/environmental medicine at Mt. Sinai Medical Center in New York City.
Dr. Johanning has done extensive work with various local, state, federal and international agencies in connection with various environmental issues including matters relating to indoor air problems primarily related to causes which included fungi and mycotoxins. He has worked with the CDC, the Toronto-Ontario Health Department, the New York City Health Department and the New York State Health Department.
Dr. Johanning also edited various articles in an extensive publication prepared by the Mt. Sinai School of Medicine Fungal Research Group, Inc. entitled “Bioaerosols, Fungi and Micotoxins: Health Effects, Assessment, Prevention and Control.” Such publication includes an article on fungal growth in buildings which was authored by defendants’ expert Harriet Burge, Ph.D.
Dr. Johanning has had a number of publications which have been subjected to peer review which include articles relating to mold and/or mycotoxins including studies done in homes or work sites.
Dr. Johanning first saw Sandra Liska in his office on April 23, 2001. Dr. Johanning claims that he obtained a comprehensive medical and environmental and occupational history from Ms. Liska. He testified that in examining a patient he always has to think of "... a differential diagnosis, meaning what diagnosis do we have that the patient presents with, could there be other causation, other underlying medical problems . . .” He further described differential diagnosis as a process by which the doctor learns all of the symptomology, completes an examination, reviews the facts and all information that’s available, and then develops the differential diagnosis of all possible conditions that would fall or be explained by the symptomology. The Court finds that a differential *354 diagnosis is a methodology which is accepted in the medical field.
The medical histoiy provided to Dr. Johanning indicated that Ms. Liska developed a problem starting in 1995 and that in the spring of 1998 her conditions worsened resulting in a number of diagnostic tests. In particular in the heating season her problems were exacerbated. He concluded that a key point in Ms. Liska’s history was that when she was away from her home in 1998 she was feeling much better and upon returning home she had a recurrence of her symptoms which resulted in her leaving her home at the request of one of her physicians.
Dr. Johanning testified to a reasonable degree of medical probability that he believes Ms. Liska exhibits symptoms consistent with having had intensive exposure to allergenic and toxic type molds. He categorizes as allergy hypersensitivity reaction a systemic affect of that. His opinion was based upon his investigation and review of available technical information as well as his examination of Ms. Liska and also based upon his education, experience and training. Some of the information relied upon was testing performed by Jeff May revealing the presence of Aspergillus and Penicillium. He also relied upon the Romer Lab data. In blood tests performed by Dr. Johanning, it was determined that Ms. Liska had a reaction to certain molds which was consistent with extensive and prolonged mold exposure ultimately resulting in hypersensitivity.
Dr. Johanning testified that the symptomology which Sandra Liska provided to him as part of her medical history was, in his opinion, related to exposure to fungi. Dr. Johanning further testified that he believes that the exacerbation of Ms. Liska’s symptoms in 1998 was caused by the amplification of exposure to toxic molds.
Dr. Johanning was asked whether he has an opinion to a reasonable degree of medical certainty as to when Ms. Liska’s exposure to molds began to which he responded that her histoiy of symptomology and medical care started in 1995. The accuracy of Ms. Liska’s medical histoiy as related to Dr. Johanning is challenged by the defendants and will certainly be the subject of proper cross examination at trial. The rationale which is followed by Dr. Johanning in drawing his medical conclusion is essentially a simple one. He relies upon the aforesaid medical histoiy as establishing symptomology commencing in 1995. He confirms the presence of the aforementioned mold and mycotoxins prior to his examination of Ms. Liska. He concludes that when Ms. Liska left the home in 1998 her symptoms disappeared and then when she returned her symptoms reoccurred. He further finds it significant that upon leaving the home her symptoms essentially abated.
The defendants contend that Ms. Liska’s work environment was also contaminated with mycotoxins and as hereinabove indicated the defendants challenge both the medical histoiy provided by Ms. Liska and the histoiy provided with respect to her home.
The Court concludes that the arguments raised by the defendants are best left to rigorous cross examination of Dr. Johanning. The Court concludes that Dr. Johanning’s method of diagnosis is sufficiently reliable to permit him to testify as to the aforementioned diagnoses as well as the likely cause thereof including an approximate time of commencement of exposure to the subject mycotoxin.
Defendants’ experts, Drs. Burge and Vaughn are both extremely qualified in their field and should be permitted at trial to testify as to their opinions as to the reliability of the methodology relied upon by the plaintiffs’ experts.
The Court also notes that the plaintiff has chosen not to present any evidence in opposition to the defendants’ motion to preclude the testimony of Dr. Hu and apparently has decided not to call him as an expert.
ORDER
For the foregoing reasons, this Court ORDERS that the motions of the defendants, Travelers Property Casualty Corp. and The Norfolk and Dedham Group to preclude the testimony of Dr. Adams and Dr. J ohanning is DENIED. The motion of The Norfolk and Dedham Group to preclude the testimony of Dr. Hu is ALLOWED.